[Cite as *State v. Miller*, 2022-Ohio-771.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| State of Ohio, | : | No. 20AP-340 |
|  | : | (C.P.C. No. 18CR-5024) |
| Plaintiff-Appellee | | |
| v. | : | No. 20AP-341 |
|  | | (C.P.C. No. 18CR-6334) |
| Glenn E. Miller, Jr., | : | |
|  | | No. 20AP-342 |
| Defendant-Appellant. | : | (C.P.C. No. 19CR-22) |
|  | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on March 15, 2022

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond*.

**On brief:** *Marcus M. Van Wey, LLC,* and *Marcus M. Van Wey,* for appellant. **Argued:** *Marcus M. Van Wey*.

APPEALS from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Glenn E. Miller, Jr., appeals the judgments of the Franklin County Court of Common Pleas following his conviction in three cases that have been consolidated for appeal. Generally, the charges stem from a series of home burglaries and thefts, most of which were indicted and prosecuted under Franklin C.P. No. 18CR-5024. Franklin C.P. No. 18CR-6334 is a drug possession case that was tried at the same time, and Franklin C.P. No. 19CR-22 is a separate burglary and theft case to which Miller subsequently entered a plea of guilty.

{¶ 2}    Miller appeals all three cases and asserts four assignments of error for this court's review.  He was indicted in the three cases for events occurring between March and June of 2018, events which can be broken down into three categories: (1) several burglaries, (2) a surveillance operation that led to a controlled traffic stop and search, and (3) an attempted investigatory stop of a vehicle that led to a car chase and then a foot chase.  But on this court's initial review, it appears that all of Miller's assigned errors relate to his convictions for the crimes prosecuted under Franklin C.P. No. 18CR-5024.  Miller has not challenged the validity of his plea or sentence under Franklin C.P. No. 19CR-22, nor has he challenged the validity of his stop, search, prosecution, verdict, or sentence for drug possession under case number Franklin C.P. No. 18CR-6334.  Accordingly, Miller has neither alleged nor shown reversible error as to those cases, and we conclude that Miller's convictions as to Franklin C.P. Nos. 18CR-6334 and 19CR-22 (appealed under case Nos. 20AP-341 and 20AP-342, respectively) must be affirmed.

{¶ 3}    And as to the ten separate crimes for which Miller was charged, tried, found guilty, and sentenced under Franklin C.P. No. 18CR-5024, he asserts error with only four. Specifically, Miller challenges his convictions for the burglaries which occurred May 1, and May 7, 2018, as well as the weapon under disability with specification charge and firearm specification attached to failure to comply charge that arose from his apprehension on June 16, 2018. *See* June 9, 2020, Jgmt. Entry Franklin C.P. No. 18CR-5024.  He first argues that the state presented insufficient evidence and that it was against the manifest weight of the evidence presented that any other persons were present or likely to be present when he trespassed into structures on May 1, and May 7, 2018, as is required by the aggravated burglary statute, and also that the state presented insufficient evidence and that it was against the manifest weight of the evidence that he actually possessed a firearm on June 16, 2018.  In accordance with the limited challenges presented by Miller in his brief, our examination of the case facts is primarily limited to the events giving rise to the offenses that have actually been challenged on appeal.

{¶ 4}    On May 1, 2018, between 7:30 a.m. and 8:30 a.m., a burglary occurred at a home on Lindstrom Drive in Franklin County.  The homeowners, P.S. and A.S., both work—P.S. generally left the house around 6:15 a.m. and A.S. generally left around 7:30. At 8:30 a.m. that morning, a neighbor alerted P.S. that the home's garage door was open. P.S. went

home to investigate and found that the home had been ransacked and several items were missing.

{¶ 5}   At some point on May 7, 2018, a burglary occurred at a home on Warm Springs Drive in Franklin County.  The homeowner T.M. was at work during the day—she had left early that morning and returned at approximately 3:30 p.m. to discover that her home had been ransacked and many items had been taken, including a new television. T.M. testified that she is employed but her work schedule is not consistent and that she may be home on any given day of the week.

{¶ 6}   On the evening of May 8, 2018, the Columbus Police Department were working in the area of Clarendon and Sullivant Avenue.  A uniformed officer initiated a traffic stop of a vehicle after hearing a report that an undercover officer witnessed the vehicle engage in a suspected narcotics transaction and then failed to stop at a stop sign. Two additional uniformed officers arrived at the scene, and witnessed the driver turn and reach behind the driver's seat. Upon being approached by one of the officers the driver—identified as Miller—admitted that he did not have a driver's license.  Miller exited the car and that officer patted him down and felt a gun holster, which he confirmed to be empty. While Miller was being patted down, another officer looked behind the driver's seat where Miller had reached and saw a pistol, which the officer seized and then confirmed was loaded. Upon a closer inspection of the driver's side door, another officer found several baggies containing a white powder that they suspected to be cocaine.  Miller's car was impounded and searched.  An inventory of the trunk revealed numerous items, several of which were subsequently identified as items that were stolen during the May 1 and May 7, 2018 burglaries.[1]

{¶ 7}   On June 16, 2018, a citizen approached two officers in a marked cruiser and complained that the driver of a specific vehicle had thrown a bottle through the windshield of his truck.  The officers identified that vehicle stopped at a red light and attempted to initiate a traffic stop, but the vehicle veered around stopped cars and began fleeing from the officers.  This led to a high-speed chase—the officers then lost sight of the suspect vehicle and radioed in a description of the car.  Two other officers heard that description and

[1] Miller has not challenged the May 8, 2018 stop or search of his automobile that ultimately led to the discovery of the stolen items.

identified the vehicle exiting the freeway at the Town Street exit of Route 315. Upon noticing the police cruiser, the suspect vehicle again fled at a high speed, hitting a parked car in the process. The driver abruptly exited the vehicle following the accident, jumped over a fence, and fled on foot. He was not apprehended at that time, but officers discovered a loaded gun on the opposite side of the fence where he had fled. A search of the abandoned vehicle located a traffic ticket in the car issued to "Glenn Miller," and the officers identified Miller as the suspect they had been chasing from a photo database, and they also identified Miller as that same suspect in court.

{¶ 8} The May 1 and May 7, 2018 burglary convictions have been challenged on appeal as to whether there was sufficient evidence presented that anyone was likely to be present at the time of the crimes, and the discovery of the abandoned gun by the fence described above led to charges of having a weapon under disability with specification and a gun specification attached to a failure to comply with order of officer, both which are being challenged as to question of possession. We have reordered Miller's assignments of error to facilitate our review.

> **ASSIGNMENT OF ERROR NO. 1:** The evidence presented at trial of the likelihood of the presence of a person other than the offender was insufficient to support appellant's convictions for second-degree felony burglaries, which occurred on May 1, 2018 and May 7, 2018.

> **ASSIGNMENT OF ERROR NO. 3:** The jury's verdicts were against the manifest weight of the evidence that someone other than the offender was likely to be present during the burglaries, which occurred on May 1, 2018 and May 7, 2018.

Miller argues that the state presented insufficient evidence, and also that the jury lost its way, in finding that "any person other than an accomplice of the offender [was] present or likely to be present" when he committed the burglaries on May 1 and May 7, 2018.[2]

> **ASSIGNMENT OF ERROR NO. 2:** The evidence presented at trial was insufficient to support appellant's convictions for the firearm specification to the failure to comply count and

---

[2] It should be noted that the effect of this court sustaining either of these assignments of error is not necessarily a new trial or a reversal of the defendant's conviction—instead, the court could modify the defendant's convictions to convert each of the two burglaries from second-degree felonies under R.C. 2911.12(A)(2) to third-degree felonies under R.C. 2911.12(A)(3). *See, e.g., State v. McCoy*, 10th Dist. No. 07AP-769, 2008-Ohio-3293 at ¶ 28-30 (reversing conviction for second-degree burglary, entering judgment of guilty on lesser-included offense of third-degree felony burglary and remanding case for resentencing).

having weapons while under disability and a firearms specification to that count on June 16, 2018.

**ASSIGNMENT OF ERROR NO. 4:** The verdicts were against the manifest weight of the evidence regarding the firearm specification to the failure to comply count and having weapons while under disability and a firearm specification to that count on June 16, 2018.

Four counts of having a weapon under disability with firearm specifications attached to each charge were tried to the court eleven days after Miller was found guilty of the burglary charges. Of those four charges, the court found him guilty of three; the jury had already found Miller guilty of a firearm specification attached to a failure to comply with order of officer. Miller's second and fourth assignments of error challenge the court's verdict as to the weapon under disability offense and its attached firearm specification, as well as the firearm specification attached to the failure to comply charge, all of which stem from the incident on June 16, 2018.[3]

{¶ 9} This court reviews Miller's assignments of error under the well-settled standards for review of sufficiency and manifest weight claims. Addressing questions of sufficiency of the evidence in *State v. Jenks*, 61 Ohio St.3d 259, paragraph two of the syllabus (1991), the Supreme Court of Ohio held that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, *following Jackson v. Virginia*, 443 U.S. 307 (1979). By contrast, determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by constitutional amendment on other*

---

[3] Miller does not challenge the court's verdict or sentence as to the two remaining weapon under disability charges or specifications on appeal.

*grounds*, and quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 10} We first address Miller's arguments in his first and third assigned errors, regarding the sufficiency of the evidence and manifest weight of the evidence presented at trial that a person was likely to be present during the burglaries for which he has been convicted. As relevant to Miller's arguments, R.C. 2911.12(A)(2) provides that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." Miller contends that the testimony of the victims of the May 1 and May 7, 2018 burglaries establishes that they were not present at the time of the offenses and cannot establish that they were likely to be present at the time of the offenses.

{¶ 11} Because each alleged burglary necessarily turns on its own unique facts, there is some difficulty enunciating a useful rule as to when a person is "likely" to be present in an occupied structure for purposes of the statute. *See generally* Ohio Criminal Law Vol. III Section 104.3, *Presence or likely presence of another person* (2009 main volume at 418 and October 2020 pocket part at 62). In *State v. Kilby*, 50 Ohio St.2d 21 (1977), the Supreme Court of Ohio held that "[w]here the state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, that the occupying family was in and out on the day in question, and that such house was burglarized when the family was temporarily absent, the state has presented sufficient evidence" to show likelihood of presence. *Id.* at paragraph one of the syllabus. *See also State v. Fowler*, 4 Ohio St.3d. 16,

19 (1983) (quoting and applying *Kilby*) and *State v. Wilson*, 58 Ohio St.2d 52, 60 (1979) (quoting *Kilby*).

{¶ 12} The longstanding rule used by this court regarding whether a person is "likely to be present" is set forth in *State v. Green*, 18 Ohio App.3d 69 (10th Dist.1984): "[T]he term 'likely' connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty.  A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present." *Id.* at 72. *Compare State v. McCoy*, 10th Dist. No. 07AP-769, 2008-Ohio-3293 at ¶ 21-22, citing *Green* and quoting *State v. Brown*, 1st Dist. No. C-980907, 2000 Ohio App LEXIS 1820 (Apr. 28,2000) ("The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely.").  In *McCoy*, this court concluded that in "the absence of evidence that one of [the residents] or any other person was likely to be present at the time of the burglary, [the state] did not carry its burden of proving all the elements necessary" to support a conviction for second-degree felony burglary. *McCoy* at ¶ 27. Regardless, when analyzing whether the evidence is sufficient to permit a factfinder to conclude that a violation of R.C. 2911.12(A)(2) occurred, the rule is an objective one—whether a rational person under all of the facts and circumstances could conclude that a person other than the perpetrator or an accomplice was "likely" to be present at the time of the entering of the premises.

{¶ 13} As to the May 1, 2018 burglary, A.S. testified that on the morning of the break-in, she had a meeting and "had to actually leave a little early. Around 7 o'clock." (Tr. at 440.) But she also testified this was "abnormal," and that while her husband typically left the house "quite early," she normally remained in the home until 7:30 a.m. on weekdays. *Id.* Her husband P.S. testified that on the day in question, he received a WhatsApp message from his neighbor indicating that his garage door was open. *Id.* at 417-18.  Upon receiving that information, P.S. left work to check on the house, and arrived home at approximately 8:30 a.m.—he actually stated that "[i]t might have been a little after 8:30, but before 9:00." *Id.* at 438.  And upon his arrival, he immediately discovered that the back window of the home had been broken into, that the TV had been stolen, that all of the couch cushions had been removed, that all of the cabinets in the kitchen had been opened, all of the drawers in the "first area had * * * been opened up and tossed," that when he went upstairs he saw the

same thing and that "[m]any things had been tossed around." *Id*. at 419. After a brief investigation, he discovered that in addition to the TV, his grandfather's coin collection and "a couple of laptops" were missing. *Id*. at 421. P.S. and A.S. ultimately determined that the stolen items included a 50-inch Samsung TV, a coin collection, an iPad, charging cables and power connectors, stuffed animals, a Chanel purse, a laundry hamper, an Xbox 360, expired passports, social security cards, a jewelry box, necklaces, earrings, at least one piece of luggage, a few Nintendo Wii video games, and some foreign currency. *Id*. at 423-35. Many of these items were located in the trunk of Miller's car when it was impounded. *Id*.

{¶ 14} Taken together, we have little trouble concluding that the foregoing evidence establishes that a reasonable juror could conclude that a person was "likely to be present" during the burglary. Given A.S.'s normal departure time of 7:30 a.m., the length of time that it would have taken for Miller to have ransacked the home and absconded with the size and number of items that were taken, and the facts that a neighbor contacted P.S. by 8:30 a.m. and P.S. arrived home within two hours of A.S. having left the house unoccupied, Miller would have had at most one and one-half hours to gain entrance to the home, go through all of the rooms on the first and second floor, examine the contents of the drawers and closets, disconnect and remove the TV, video game systems, and laptops, locate the stolen luggage and other containers and pack other stolen items in them, and move everything to his vehicle. We think it plain that "consideration of all the circumstances would seem to justify a logical expectation that a person could be present" during the short time frame that the burglary occurred. *Green*, 18 Ohio App.3d at 72. Moreover, given the evidence presented that Miller's vehicle was found with specific unique items stolen from A.S. and P.S. during the burglary, we cannot say that this is an exceptional case in which the evidence weighs heavily against the conviction or that the jury clearly lost its way and created a manifest miscarriage of justice by concluding that Miller burglarized their home and stole those items. *Compare Harris*, 2014-Ohio-2501 at ¶ 22, citing *Thompkins* at 387.

{¶ 15} We reach the same conclusions regarding the May 7, 2018 burglary for which Miller was convicted. T.M. testified that her work schedule was irregular. She stated that she was both a child psychologist and worked at a hospital in microbiology and that her shifts were 8 to 12 hours long, but also that those shifts varied frequently. (Tr. at 344-48.) She often worked weekends—at least once a month—meaning that it was "very possible"

for her to be at home all day on any given weekday. *Id.* at 358. On the day of the burglary, she left for work at approximately 5:00 a.m. and returned around 3:30 p.m. *Id.* at 359.

{¶ 16} The break-in was witnessed by her neighbor, who called the police. *Id.* The burglar apparently broke into the house's side window, *id.* at 349, ransacked cabinets and drawers, and took her passport, social security card, 55" TV, blank checks, tax paperwork, decorative plates, silver teaspoons, silver coffee spoons, an ivory necklace, a jasper pendant, an amber necklace, jeweled earrings, rings, unpolished gemstones, a leather briefcase, several pairs of eyeglasses, leather purses and bags, Russian coins, and shoes among other items. *Id.* at 350-55. Again, many of these items were retrieved from the trunk of Miller's impounded vehicle. Given the early hour when the burglary apparently occurred, the variability of T.M.'s schedule, the thoroughness with which Miller was able to search the home, and the amount and size of items taken, "consideration of all the circumstances would seem to justify a logical expectation that a person could be present" when the burglary occurred, *Green*, 18 Ohio App.3d at 72, and we likewise cannot say that the jury lost its way or committed a manifest miscarriage of justice when it found Miller guilty of burglary under R.C. 2911.12(A)(2) for committing this crime.

{¶ 17} For the foregoing reasons, Miller's first and third assignments of error are overruled.

{¶ 18} Moving to Miller's second and fourth assignments of error, it was stipulated by the parties that Miller was previously convicted of a disabling offense and a firearm specification. But he contends that there is no evidence to establish that he was in possession of a firearm on June 16, 2018, when he fled from police officers, and therefore his convictions for having a weapon under disability with specification as well as the specification attached to the failure to comply charge are unsupported by sufficient evidence and against the manifest weight of the evidence.

{¶ 19} The state admits that it did not present any direct evidence that Miller possessed a firearm on that date. However, it argues that two police officers identified the area where Miller jumped over the fence and fled from them, and that one of those officers looked down and immediately noticed a handgun on the grass on the other side of the fence.

{¶ 20} In *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976) the Supreme Court held that "[c]onstructive possession exists when an individual exercises dominion and control

over an object, even though that object may not be within his immediate physical possession." Miller is essentially asking this court to find that it was unreasonable and against the manifest weight of the evidence to for the jury to conclude that he threw or dropped the firearm in question while he was fleeing the police, either just prior to or after he jumped over the fence. The testimony by the police that they found the gun where Miller jumped over the fence as he was being chased by them is both enough to present to a factfinder and enough for a factfinder to conclude that he constructively possessed the firearm and discarded it when he felt he was in danger of apprehension. Accordingly, Miller's second and fourth assignments of error lack merit, and we therefore overrule them.

{¶ 21} In summary, Miller has assigned no error for us to review in appellate case Nos. 20AP-341 and 20AP-342, and his four assignments of error relating to case No. 20AP-340 lack merit and are overruled. Accordingly, the judgments of the Franklin County Court of Common Pleas in all three cases are affirmed.

*Judgments affirmed.*

SADLER and JAMISON, JJ., concur.

———————————————